CRIST, INC. AND JOHN CRIST *v.* WHITACRE.

[No. 169A4. Filed May 14, 1970. Rehearing granted and judgment modified, August 11, 1970. Transfer denied December 29, 1970.]

*G. Daniel Kelley, Jr., Esq., Myers, Slagle & Shirey,* Muncie and *Geoffrey Segar, Esq., Ice Miller Donadio & Ryan,* Indianapolis, for appellants.

WHITE, J.—While working as a farm laborer Paul R. Whitacre was injured, losing the sight of an eye. He sued under the Employers' Liability Act,[1] obtaining a verdict and judgment of $15,000.00 from which his employer, Crist, Inc., and the employer's president, John Crist, have appealed.

Crist, Inc., was in the business of warehousing truck accessories and safety equipment, and, through its president, John Crist, also operated a farm near Hartford City. Paul Whitacre, age 28, had been working at Overhead Door approximately five and one-half years, doing carpentry work in a limited sense when Mr. Crist employed him to work after

---

1. Ind. Acts 1911, ch. 88, Burns Ind. Stat. Ann. §§ 40-1101—40-1114.

hours on the farm. The parties were unacquainted prior to the employment. Their first contact occurred when Whitacre called a telephone number given in a help-wanted advertisement. Crist answered and told Whitacre to come to the farm where he was interviewed and hired. At that time he told Crist that he had worked on a farm and that he had helped his brother-in-law put up some fence for a Pete Redmond. He suggested that Crist could call Mr. Redmond, but Crist declined. Crist described the work to be done as cleaning up trash, cutting the weeds and "everything like that". Whitacre said he thought he could do it. After his employment and before his accident, he cut weeds, hauled trash, picked up wood, watered and fed the livestock, and did general work around the farm. On one occasion he helped Crist string barbed wire. He sat on the tailgate of a station wagon unreeling the wire as Crist drove.

On August 20, 1965, less than one month after he was hired by Crist, Whitacre finished his day's work at Overhead Door and than went to the farm. He was helping water the hogs when Mr. Crist commenced to anchor a hog trough to stakes to prevent its being tipped over. When Crist ran short of wire, he handed his pliers to the employee and said: "Paul, go get me another piece of wire. There's some on the post across the road." Paul did so; when he cut the wire it sprang back and hit him in the eye, causing the injury in question.

The injured employee's complaint alleges, as its sole charge of negligence, that the defendants failed to warn him that the wire was springy and tense and, that when cut, it might spring up and strike him. It was also alleged in the complaint that the defendant-appellant Crist, Inc., was an Indiana Corporation engaged in business in Indiana and employing more than (5) persons (for the purpose of bringing it under the Employers' Liability Act of Indiana).[2]

---

2. We quote from the Appellants' Brief:
"The theory of liability presented by the complaint against these appellants differs as to each appellant. First, the theory against ap-

Defendants' answer denied the allegation of negligence and alleged that the injured employee was guilty of contributory negligence.

After the trial and verdict awarding damages to the injured employee the defendant-appellants filed a motion for a new trial on the grounds: 1) * * * [abandoned]; 2) that the verdict was not sustained by sufficient evidence; 3) that it was contrary to law; 4) that there was error in giving the instruction No. 3 and defendants' instruction No. 9 as modified by the court, and in overruling defendant-appellants' several motions for directed verdicts. The overruling of the motion for new trial is the sole error assigned on this appeal.

Since the sole charge of negligence was failure to warn the injured employee of the danger involved in the cutting of the wire and defendants admit that no such warning was given, it logically follows that the paramount question in this appeal is whether defendants were under any duty to so warn.

That question, in its many facets, is argued under every ground of the motion for new trial, but seems more sharply focused in the jury instructions to which the defendant-appellants objected.

The first of these is the court's final instruction No. 3, which reads as follows:

pellant John Crist as an individual was that of ordinary negligence which does not involve the Employers' Liability Act, *supra*, [Ind. Stat. Ann. §§ 40-1101 et seq. (1965)] since John Crist was not an employer. Second, as against appellant Crist, Inc., the theory was under the Employers' Liability Act, *supra*. In this regard, one issue at the trial was whether appellee Whitacre was other than an agricultural worker so that the Workmen's Compensation Act would have been his exclusive remedy. Conflicting evidence was presented and the jury obviously found him to have been an agricultural worker by reason of which he was excluded from the effect of the Workmen's Compensation Act which appellants are not raising as error in this apeal.

* * *

"The interplay of these two theories of the complaint . . . [affects this case] in the following manner: . . . the failures of proof in regard to the negligence which allegedly occurred . . . [applies] equally to both appellants; while the . . . [question] of the *availability* of the defense of contributory negligence under the Act, . . . [applies] only to appellant Crist, Inc., since the Act [which limits its availability] does not apply to appellant John Crist as he was not an employer."

"If an employer employs an employee to do work of a dangerous character and the employee, because of youth, ignorance or inexperience, fails to appreciate the danger, it is negligence and a breach of duty on the part of the employer to expose the employee to such danger, even with the employee's consent, unless the employer first gives to the employee instruction, caution and warning as will enable the employee to comprehend the danger and do his work safely with the exercise of proper care on his part. The danger of an employment, in order to create a duty of warning and instruction on the part of the employer, must be one which is unknown to the employee, and also must be one which is known to the employer or should be known to him by the exercise of reasonable vigilance."

The second instruction objected to is the defendants' own instruction No. 9 as it was *modified* by the court. The full instruction as tendered by defendant-appellant is set out below. As it was read to the jury, however, the instruction did not contain the final sub-paragraph numbered 3, (through which parallel lines have been drawn to indicate what was deleted by the court) :

"If you further find from a preponderance of the evidence that Crist, Inc. gave a general order to plaintiff to cut the wire, and that the Employers' Liability Act applies to this case, then you must also find from a preponderance of the evidence that:

1. Crist, Inc. knew or in the exercise of reasonable care ought to have known that the wire cut by plaintiff would spring in such a way and in such a manner as to cause injury to plaintiff, and

2. That Paul R. Whitacre did not know and had no means of knowing and was ignorant that the wire he cut with the pliers would spring in such a way and in such a manner as to cause injury to him, and

3. That Crist, Inc., or its officers and agents, were aware of and had actual or constructive notice that Paul R. Whitacre was ignorant of and had no knowledge that the cut wire would spring in such a manner as to cause injury to plaintiff.[3]

---

3. Both parties seem to assume that this instruction means something more than its words literally say. They speak of it as though it means not merely that the jury "must also find" the facts stated in 1 and 2,

The primary thesis of the defense, which the foregoing defendants' instruction No. 9 apparently was intended to embody, is stated thus in appellants' brief:

"The case law with regard to an employer's duty to warn or instruct an inexperienced or ignorant employee as to the dangers in the work to be performed has clearly set forth three inclusive elements which must be proven to show such a duty: (1) that the employer knew or in the exercise of reasonable care should have known of the danger; (2) that the employee did not know through inexperience or ignorance of the danger; and (3) that the employer had knowledge or cause to know of the employee's ignorance or inexperience. The failure to prove any one of the elements constitutes a failure to prove duty or negligence on the part of the employer."

The defendant-appellants do not contend that the evidence was not sufficient to sustain a finding that the defendants knew of the danger (thus tacitly admitting that element (1) was proved). And while they argue that the "uncontradicted evidence" shows that the employee knew of the danger, the most that can be said for such evidence is that it was sufficient to have supported such an inference if the jury chose to draw the inference. The employee-appellee's counsel, however, point to other evidence, also uncontradicted, which could reasonably lead to the inference that he did not know of or appreciate such danger. It would benefit nothing to recite the evidence in detail. It was sufficient to sustain the appellee's burden of proving that he had no actual knowledge of the danger (thus proving element (2) of defendant's instruction No. 9).

Proof of actual ignorance of the dangerous propensities of coiled wire, however, is not enough if it is a matter of such common knowledge that, in appellants' words, "all individuals, regardless of their actual state of knowledge or level of experience, are deemed to have knowledge of such

but that the jury must find those facts before it can find that defendants were negligent in failing to warn the injured employee. In the absence of some such assumption, and standing alone, the instruction does not make sense. When read with all other instructions, however, its assumed meaning is probably clear.

dangers." Defendants make a good case for the principle of establishing minimum standards of acceptable human conduct on the basis of the knowledge possessed by the hypothetical "reasonable man". As stated in Prosser, THE LAW OF TORTS, § 32, pp. 161-2 (3rd Ed., 1964) :

". . . there are certain things which every adult with a minimum of intelligence must necessarily have learned: the law of gravity, the fact that fire burns and water will drown, that inflammable objects will catch fire, . . . [etc.].

"Such an individual will not be credited or excused when he denies knowledge of the risk; and to this extent, at least, there is a minimum standard of knowledge, based upon what is common to the community."

If the springiness of the wire which injured this employee falls into the category of knowledge which is common in the community where he was employed, then it is possible that he was so conclusively presumed to have known of the danger that no one, under any circumstances, owed him a warning of the danger. This we are not required to decide, however, because we have not been convinced that the springiness of wire is a fact of such common knowledge.

Consideration of the third element, "that the employer had knowledge or cause to know of the employee's ignorance or inexperience", brings us to the crux of this case. In defendants' jury instruction No. 9, as submitted, that third element is stated in slightly different language in that it requires an employer "to be aware of and . . . [have] actual or constructive notice" of an employee's ignorance or inexperience. We shall assume that they both mean, for this case, that unless John Crist actually knew or had cause to know that this injured employee did not appreciate the danger involved in cutting this wire from this reel on this post, John Crist had no duty (as an individual or as president of the corporate employer) to warn him of the danger when he ordered him to do the cutting. On the other hand, it is quite clear that the trial judge's jury instruction No. 3 requires only ignorance of the

danger on the part of the employee and knowledge of the danger on the part of the employer, to create the duty to warn. Such is also the practical effect of defendants' instruction No. 9 as modified by the court.

It seems to us that to sustain defendants' contention that the employer must have actual or constructive knowledge of the employee's ignorance before he has a duty to warn, would be to authorize all employers to assume at all times that all their employees know everything necessary to enable them to do all their work safely, unless and until the employer actually learns, or is constructively notified that an employee is ignorant of some fact material to his safety at work. At the other extreme, the instructions objected to would require all employers to assume that all employees are ignorant of all dangers. These instructions make no provision for excusing failure to warn an employee whom the employer has good reason to believe is aware of the danger. Both positions seem to us to be unfair.

The unfairness of the defendants' position is illustrated in *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, 297, 298, 75 N. E. 277, an authority on which defendants rely. In that case the theory of one paragraph of complaint was that the injured employee "by reason of his youth and his inexperience in working about dangerous machinery was incapable of appreciating the perils and risks incident to the work which he was employed to perform, and that . . . his master, owed the duty of giving him . . . proper instructions and caution in regard to the manner of safely performing his work." Minds accustomed to modern socio-economic attitudes must be appalled by some of the statements in the opinion, such as:

"It [the complaint], however, falls short of presenting a case within this theory. Aside from the fact that appellee [the injured employee] was fourteen years of age, there is nothing in addition thereto to disclose that he was either

ignorant or inexperienced in regard to the hazards, if any, of the services of work which he had been hired to perform . . . . The presumption is that appellant [the employer] was not guilty of a breach of its legal duty, and we can not supply by intendment facts tending to establish such breach . . . . The fact alone that appellee was fourteen years of age will not raise or justify the inference that he did not know or appreciate the risks of his employment, and was not qualified by experience to judge of the character and hazard of the work which he had undertaken to perform." (165 Ind. at 298.)

In other words, even a fourteen year old boy who comes into a factory to work near machinery which can (and did) rob him of an eye without his even touching it, may be presumed by the employer to be *experienced* to the extent of appreciating the danger involved. That presumption insulates the employer against liability for failure to warn and instruct unless and until something more than the child's mere tender years comes to his attention. Something more forceful than common knowledge of youthful ignorance must tell him that the boy is not experienced in the hazards of his employment. The employer is not even required to make an investigation to determine what, if anything, this beardless boy actually knows about the danger of getting close to this machine without protecting his eyes. "Unfair" seems a mild word for a rule by which the callow youth is presumed wise to the dangers of factory machinery while the employer and the court close their eyes to the realities of childhood ignorance, inexperience and rash unawareness of danger.

At the other extreme it seems equally unfair that the careful employer who has good cause to believe that an employee has sufficient experience to perform the work assigned to him should be held responsible for not giving such warnings, merely because the employee was actually ignorant of the danger. By "good cause" we, of course, have in mind something more than the unrealistic presumptions which protected nineteenth century employers. We are thinking of an employer

who has made reasonable inquiry and has drawn reasonable inferences from the answers elicited.

In the case at bar the injured employee was neither a child neophyte nor a middle-aged veteran, either in general farm work or in working with wire. The knowledge obtained by the employer's president about the employee's experience at the time he hired him was not only meagre but wholly unverified.[4] We believe that the jury had a right to decide whether Mr. Crist should have warned the employee of the danger when he sent him to cut the wire. And in making that decision we believe the jury could, and should, have taken into consideration not only what Mr. Crist knew about plaintiff's experience in cutting wire, but whether Mr. Crist had made a sufficient investigation of Paul Whitacre's experience with wire. Among specific considerations, the jury could have pondered whether, in the light of what he knew of his new employee at the time he sent him to cut the wire, Crist should have asked him any questions to test his knowledge of how the cutting should be done, before assuming he needed no warning of danger. The jury's standard, or guide, for judging Mr. Crist's duty should have been the reasonably prudent man. What would the reasonably prudent man have done in the same, or similar circumstances?

Because we believe that the evidence in this case is sufficient to sustain either conclusion (i.e., that Mr. Crist did, or that he did not, act as a reasonably prudent man) we see error in no action of the trial court except its failure properly to instruct the jury on this point. Since it was not instructed on this point, how can it be assumed that the jury made the findings necessary to sustain its verdict? The jury could well have assumed that what John Crist knew about Paul Whitacre's experience with wire was wholly irrele-

4. Applicants for employment have an interest in creating a favorable impression as to their ability to perform work of the type they anticipate will be assigned to them. The plaintiff told Mr. Crist he had assisted in building a fence but did not say that the fence had fallen down, although he did invite inquiry of the man for whom the fence was built.

vant. If so, it made no difference whether Mr. Crist had made a reasonable effort to learn enough about his employee's experience to assume that no warning was necessary. The jury may even have believed that the information Mr. Crist had was all that a reasonably prudent man would have required and that, on such information, he reasonably believed Paul knew how to cut the wire safely. Yet the jury may, nevertheless, have understood that because Paul was actually inexperienced, the defendants were liable for his injury because they did not warn him of a danger they reasonably thought he appreciated.

The defense of contributory negligence may merit some comment. We believe it a fair statement of appellant's position to say that plaintiff-employee could not be guilty of contributory negligence unless he knew, or was charged with knowing, of the danger involved in cutting wire. And if he had, or was held responsible for having, such knowledge, then the employer had no duty to warn him and was not negligent.

In many instances the practical result of accepting the last statement as correct would be just. But the statement is not wholly correct. The employer's duty is not measured by what the employee knows or does not know about the danger involved. His duty is measured by what he has good reason to believe the employee knows about the danger involved. Whether John Crist should have warned Paul Whitacre depended on whether a reasonably prudent person would have concluded, from what he knew of Whitacre at the time he gave the order, that no warning was reasonably necessary to Whitacre's safety. If, by that test, he should have warned Whitacre, his failure to warn was negligence. And if Whitacre nevertheless knew of the danger but took no precautions to minimize it, he was contributorily negligent.[5]

---

5. This confusion between the care one must exercise for the safety of another person (the failure of which is negligence) and the care one must exercise for one's own safety (the failure of which is contributory

The question of contributory negligence also involves the question of what effect, if any, should be given to section 2 of the Employers' Liability Act, Burns IND. STAT. ANN. § 40-1102. In part, it provides that "[n]o such injured employee shall be held to have been guilty of negligence or contributory negligence where the injury complained of resulted from such employee's obedience or conformity to any order or direction of the employer. . . ."

We do not believe it can fairly be said that the injury in this case "resulted from" obedience to the order to go cut a piece of wire. It resulted from the manner in which the wire was cut. The order did not specify the means to be employed in carrying it out. *Goings* v. *Davis,* (1923), 82 Ind. App. 231, 234, 141 N. E. 473.

For error in giving the court's final instruction No. 3 and defendants' instruction No. 9, as modified by the court, the judgment must be reversed. On retrial the jury should be fully instructed in conformity with the views we have here expressed.

The judgment is reversed and the cause remanded with instructions to the trial court to grant defendants' motion for a new trial and for further proceedings not inconsistent herewith. Costs are assessed against appellee.

Hoffman, P. J., Pfaff and Sharp, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 165.

## ON PETITIONS FOR REHEARING

WHITE, J.—Both appellee and appellants have filed petitions for rehearing. Both allege that our decision contravenes ruling precedent of the Supreme Court. The extent to which that is true, and the reasons therefor, are sufficiently discussed in our initial opinion. Since we remain convinced that those prece-

---

negligence) is also found in an instruction we held bad in *Wyler* v. *Lilly Varnish Co.* (1969), 252 N. E. 2d 824, 836, 19 Ind. Dec. 510, 527.

dents are obsolete, we see no reason to discuss them further. Other grounds for rehearing appear to merit no specific mention. As to rehearing, both petitions are denied.

The appellants' petition, however, includes the alternative prayer that our mandate be modified to limit the new trial to the single issue of the liability pursuant to the direction of Rule AP 15(M) that "if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair". Since the error necessitating reversal relates only to liability and does not affect the verdict as to the amount of the plaintiff's damages we agree that our mandate should be modified. It is therefore modified to read:

The judgment is reversed and the cause remanded with instructions to the trial court to grant appellant a new trial to be conducted in conformity with the views expressed in our initial opinion and with the issues thereof limited to the question of whether the defendants are liable to the plaintiff for his damages resulting from the injury described in the complaint. If the verdict or decision is for the plaintiff the court shall enter judgment in his favor against both defendants in the sum of $15,000.00, to bear interest at the rate of 6% (per cent) per annum from the date of the first verdict and costs. If the verdict[1] or finding be for the defendants, judgment shall be that plaintiff take nothing and that defendants recover their costs.

Hoffman, P.J., Sharp and Pfaff, JJ., concur.

NOTE.—Reported in 260 N. E. 2d 893.

---

1. Burns IND. STAT. ANN. § 19-12-102 (1964 Repl.); *Hemstock v. Wood* (1942), 113 Ind. App. 112, 119, 120, 44 N. E. 2d 1016. "To prevent controversy, and to aid the clerk in the performance of his duties in the matter of entering satisfaction of the judgment in such cases, the judgment should be for the sum awarded, together with interest thereon at the rate of six per cent, per annum from the specified date of the return of the verdict until the judgment shall be satisfied." *Lake Erie etc., R. Co. v. Huffman* (1912), 177 Ind. 126, 147, 97 N. E. 434.