**RAMADA HOTEL OPERATING COMPANY Appellant–Defendant,**

**v.**

**Robert SHAFFER Appellee–Plaintiff.**

**No. 29A02–9007–CV–412.[1]**

Court of Appeals of Indiana,
First District.

Aug. 19, 1991.

Jon D. Krahulik, Robert G. Weddle, Robert W. Strohmeyer, Jr., Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellant-defendant.

William L. Barr, Jr., Bell, Boyd & Lloyd, Chicago, Kevin P. Farrell, Townsend, Yosha & Cline, Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Ramada Hotel Operating Company appeals from a jury verdict on Robert Shaffer's complaint for compensatory and punitive damages for personal injury. The jury found in Shaffer's favor and awarded him $999,000.00 in compensatory damages and $2,791,530.00 in punitive damages. The Ramada Hotel Operating Company claims that the trial court should not have permit-

---

1. This case was diverted from the Second District by direction of the Chief Judge.

ted the jury to award punitive damages and that the jury improperly awarded punitive damages calculated solely with improperly admitted evidence. Because we reverse, we will decide only the issue dispositive of this appeal, as only one prejudicial error need be presented for reversal. *Coleman v. Mitnick* (1964), 137 Ind.App. 125, 202 N.E.2d 577, *on rehearing,* (1965), 137 Ind. App. 133, 203 N.E.2d 834, *trans. denied.* We note that this appeal does not contest compensatory damages. The Ramada Hotel Operating Company states the issue as:

> Whether the admission of opinion testimony, over objection, concerning the net worth of an entity other than the defendant is reversible error where the jury relied on the net worth evidence in calculating and awarding punitive damages?

The evidence reveals that Shaffer was a pilot for United Airlines and had an overnight stop in Indianapolis. United Airlines had an agreement with the Ramada Inn–Airport to accept its airline employees at group rates, and Shaffer checked in for the night. After breakfast, Shaffer heard water running in the bathroom and went to investigate. He saw a stream of water flowing from a ceiling tile above the bathroom sink to the counter and onto the floor. Before maintenance people arrived, the ceiling had collapsed and had knocked him to the floor. Amidst the water and debris was a bus tub. Employees of the hotel had put the tub on the metal framework of the ceiling tiles to catch the water from the leak which had been present for more than a year. When the hotel was not full, the employees would set up a method by which the water could be diverted to the bathtub and the room was designated "out of order." When the hotel was full, the hotel would place a bus tub above the ceiling tiles and rent the room. Waterlogged ceiling tiles were not uncommon in this bathroom; but the hotel did not warn guests, including Shaffer, about the leak or the bus tub.

Shaffer initially brought suit against Ramada Inns, Inc., Ramada, Inc., and the Ramada Hotel Operating Company but voluntarily dismissed his complaint against the first two in favor of his suit against the latter. Thus, the Ramada Hotel Operating Company was the only defendant in the trial of this case. Shaffer sought punitive damages in his claim and sought to introduce evidence of the net worth of the "Ramada Hotel Group" as a basis for the jury to assess the proper amount of exemplary damages against the Ramada Hotel Operating Company. That goal was complicated because several companies use "Ramada" in their names. For instance, the parties mentioned both Ramada Inns, Inc. and Ramada, Inc. throughout the trial even though those entities were no longer parties to the litigation. In the interest of clarity, references to the defendant in this suit, the Ramada Hotel Operating Company, will be *underlined* to distinguish it from all other entities or groups which share the name "Ramada."

Shaffer called his expert witness to the stand during his case-in-chief. Counsel for Shaffer had asked the expert to research the net worth of Ramada, Inc. (R.974). The expert studied some financial statements from the Securities and Exchange Commission (the SEC) with respect to the sale of the Ramada Hotel Group to a group of investors (R.975). The expert stated the numbers he was about to give came from the documents from the SEC, which dealt with Ramada, Inc. and the Ramada Hotel Group (R.979). There is no indication this SEC filing dealt with Ramada Inns, Inc. With regard to this SEC document, the defendant asked a preliminary question:

> Q. And certain documents pertaining to a proposed sale of a portion of the *Ramada Hotel Operating Company,* is that correct?
>
> A. Of Ramada ... essentially the Hotel Group, yes, and the subsidiaries.

(R.976).

Even if the SEC documents could be said to have pertained to the proposed sale of the *Ramada Hotel Operating Company* as part of the Ramada Hotel Group and the subsidiaries, those documents were not provided to the jury or to us in the record. The record is devoid of any specific information about what relationship, if any, ex-

isted between the *Ramada Hotel Operating Company* and Ramada, Inc., the Ramada Hotel Group, or the subsidiaries.

The expert further stated he had consulted a separate financial statement, not the SEC document, for the entire company, Ramada Inns, Inc.:

A. That would be Ramada Inns, Inc., yes.

Q. And it's not the *Ramada Hotel Operating Company* solely, is it?

A. No, it would not be. There are problems with trying to segregate out.

\*  \*  \*  \*  \*  \*

Q. Am I to understand correctly, sir, that this is the balance sheet or proxy statement, I think, for Ramada Inns, Inc. and subsidiaries, is that right?

A. That's correct, yes, sir.

Q. And is there ... are there any figures on this document which specifically show the net worth for the *Ramada Hotel Operating Company*?

A. No, there are not.

Q. So they are consolidated into one form?

A. That's correct, yes.

(R.980–981, 984–985).

At this point in the testimony, the expert had stated that he had relied upon the SEC document with respect to Ramada, Inc. and the Ramada Hotel Group and upon the separate financial statement with respect to Ramada Inns, Inc. He did not state how the *Ramada Hotel Operating Company* relates to any of them, except that he had found it difficult to isolate the *Ramada Hotel Operating Company* from Ramada Inns, Inc. based upon the separate financial statement and that the finances of these two entities were somehow consolidated into one form.

The expert testified the separate financial statement dealt with Ramada Inns, Inc. and not "solely" with the *Ramada Hotel Operating Company* because "there are problems trying to segregate [the *Ramada Hotel Operating Company*] out." The expert based his testimony entirely upon Ramada Inns, Inc. with regard to the separate financial statement, as he did not state

either Ramada, Inc. or the Ramada Hotel Group had any connection with it.

Counsel for the defendant then continued:

Q. Is your testimony based upon the Ramada Inns, Inc. Corporation [sic]?

\*  \*  \*  \*  \*  \*

A. I ... yes. And also the Hotel Group.

Q. Well, I'm going to ask you again, sir, is the number you're going to give us the net worth for the *Ramada Hotel Operating Company*?

A. Not for the *Operating Company* per se. But that was not the question that [counsel for Shaffer] asked me. Not the *Operating Company*.

(R.981–982). From all of this testimony, one could reasonably infer the financial statement of Ramada Inns, Inc. also included, to some extent, information about *Ramada Hotel Operating Company;* however, the financial statement of Ramada Inns, Inc. did not include specific information about the *Ramada Hotel Operating Company* from which its net worth could be calculated nor did it show what relationship, if any, existed among *Ramada Hotel Operating Company* and Ramada Inns, Inc., Ramada, Inc., and the Ramada Hotel Group.

Counsel for Shaffer then explained that the answer he sought to elicit dealt with the value of the Ramada Hotel Group and not the "entire Ramada, Inc.":

Q. Well, Professor Parks, does *Ramada Hotel Operating Corporation* [sic] file a separate financial statement?

A. I could not find a financial statement for them.

Q. Does Ramada Incorporated file a consolidated financial statement which includes its Hotel Group?

A. Yes, and all the subsidiaries.

Q. Okay. And have you a basis based on the documents that you have studied to tell this court and jury with a reasonable degree of certainty about the value of the Hotel Group as opposed to the value of the entire Ramada Incorporated?

A. To the.... I have one in terms of the assets of the Hotel Group, yes.

Q. That's precisely my question. Can you do that?

A. Yes.

(R.981, 983–984). The net worth figure gleaned from the SEC document was not that of the *Ramada Hotel Operating Company* but that of the Ramada Hotel Group because the expert had found a financial statement which included the latter but had not found a financial statement solely for the former. Still, the expert did not testify what connection, if any, existed among Ramada, Inc., the Ramada Hotel Group, and the *Ramada Hotel Operating Company.*

Counsel for the defendant questioned the expert further along these lines:

Q. From these documents you have in front of you can you tell us what the net worth is for the *Ramada Hotel Operating Company* only?

A. I cannot, no.

\*       \*       \*       \*       \*       \*

Q. Okay. Where on here does it tell about the Hotel Group that you're referring to?

A. It does not tell about the Hotel Group.

Q. Where's the document that talks about the Hotel Group?

A. It's in the total prospectus. I would have to get that out.

\*       \*       \*       \*       \*       \*

Q. I want to ask you, is there some document you're relying on that tells you specifically for 1989 what the net worth of the *Ramada Hotel Operating Company* individually is?

A. Not a specific doc ... or no.

Q. And have you made a calculation as to that just for the *Ramada Hotel Operating Company* as to its net worth?

A. Yes. I've made a calculation on that.

Q. For the *Ramada Hotel Operating Company* only?

A. No, not for the *Ramada Hotel Operating Company* solely, no, that's ...

Q. All right. Do you even know what assets from this information the *Ramada Hotel Operating Company* owned?

A. No, I do not.

Q. You don't know what hotels *they* own or where they might be?

A. No, I do not.

(R.985–987).

The trial court allowed the expert to testify that the net worth of the Ramada Hotel Group was $279,153,000.00. During closing argument, plaintiff's counsel argued to the jury that it could, for example, punish the *Ramada Hotel Operating Company* for its behavior by awarding Shaffer one percent of this amount, or $2,791,-530.00. The jury awarded Shaffer this exact amount in punitive damages.

On appeal, the *Ramada Hotel Operating Company* claims Shaffer failed to lay a proper foundation for the admission of the expert's opinion testimony and thus introduced evidence on the net worth of an entity other than itself. The *Ramada Hotel Operating Company* further contends the trial court improperly allowed the jury to use the net worth testimony in its punitive damage calculation.

■ The purpose of an award of punitive damages is to punish the wrongdoer and thereby deter others from similar conduct in the future. *Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572, *trans. denied.* There are two primary factors which should properly be considered in reviewing an award of punitive damages. First, the nature of the tort and the extent of the actual damages sustained should be considered. Second, the economic wealth of the defendant should be considered. *Indiana & Michigan Electric Co. v. Stevenson* (1977), 173 Ind.App. 329, 363 N.E.2d 1254, *trans. denied.*

■ Inasmuch as this Court should review the defendant's economic wealth in the situation where punishment and deterrence are the stated purposes, the economic

wealth of the defendant is material to the issue of punitive damages so that these objectives will be fulfilled. The economic wealth of a defendant tends to show the financial condition of the defendant, which, in turn, tends to show the point at which an award of punitive damages becomes an amount which will deter and punish the defendant. *See Riverside Ins. Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796. Based upon the theory that it will take a greater penalty to dissuade the rich than the poor from oppressive conduct, the wealth of the defendant may be shown so that the jury will assess damages which will punish it. However, there appears to be no requirement that evidence of worth be submitted in cases of punitive damages. *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845. In the present case, evidence about the net worth of the *Ramada Hotel Operating Company* would have been one indication of its economic wealth as the defendant. Such evidence would clearly have been material and relevant to the issue of punitive damages.

To the extent Shaffer attempts to pierce a corporate veil between *Ramada Hotel Operating Company* and the other entities named "Ramada," that attempt falls short of success. Indiana courts are generally reluctant to disregard corporate identity but will do so to protect innocent third parties from fraud and injustice. *Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind.App., 527 N.E.2d 726. It is only upon a careful review of the entire relationship between parent and subsidiary that the corporate veil can properly be pierced. *Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind.App. 295, 352 N.E.2d 821, *trans. denied.* Shaffer has provided us with no such reviewable relationship. As noted, even if the SEC documents could somehow be said to have pertained to the proposed sale of the *Ramada Hotel Operating Company* as part of both the Ramada Hotel Group and the subsidiaries and even if one could reasonably infer the financial statement of Ramada Inns, Inc. also included, to some extent, information about *Ramada Hotel Operating Company*, those documents have not been provid-

ed to us. The record is devoid of any specific information about what relationship existed between the *Ramada Hotel Operating Company* and Ramada, Inc., Ramada Inns, Inc., the Ramada Hotel Group, and the subsidiaries. We cannot conduct a careful, thoughtful review of the entire relationship among the entities when all we know is that some relationship exists. In fact, the record does not show any parent-subsidiary relationship exists among any of them. Shaffer has not shown the *Ramada Hotel Operating Company* was a mere instrumentality or an alter ego of the other companies nor that fraud or injustice could be prevented if the veil is pierced. Shaffer has not shown sufficient grounds to ignore the distinct corporate identities.

In *Archem, Inc. v. Simo* (1990), Ind. App., 549 N.E.2d 1054, *trans. denied,* we determined that evidence of the wealth of the parent corporation was admissible against its subsidiary on the issue of punitive damages where a sufficient evidentiary basis existed to show the subsidiary constituted a mere instrumentality of the parent corporation. There, the same person was chairman of the board of the parent corporation and the sole director on the board of the subsidiary. The two corporations filed consolidated tax returns and a consolidated annual financial report. One of the parent's directors ran the subsidiary, and the subsidiary did not have its own in-house corporate counsel. *Id.* In the present case, Shaffer, at most, showed that some relationship exists among the entities and that the expert could not find a separate financial statement for the *Ramada Hotel Operating Company.* Shaffer contends the evidence of the value of the Ramada Hotel Group was appropriate even though it showed "suggested but unarticulate distinctions" between its value and that of the defendant. We conclude the evidentiary basis was insufficient to admit the expert opinion of net worth against this defendant based upon the financial documents. *See generally, HCA Health Services v. National Bank* (1988), 294 Ark. 525, 745 S.W.2d 120 (plaintiff improperly emphasized to jury non-party parent corpo-

ration's size and wealth on the issue of punitive damages where plaintiff showed no reason why separate identities should be disregarded); *Liberty Financial Management Corporation v. Beneficial Data Processing Corporation* (1984), Mo.App., 670 S.W.2d 40 (on the record before the court, parent corporation's financial statement injected irrelevant matters into the case and should not have been admitted because evidence did not show subsidiary was created or used for an improper purpose and therefore did not support piercing of corporate veil); *Walker v. Dominick's Finer Foods, Inc.* (1980), 92 Ill.App.3d 645, 47 Ill.Dec. 900, 415 N.E.2d 1213 (nothing in the record warranted the admission into evidence of the financial figures of the alleged parent corporation of the defendant, a non-party, where evidence was insufficient to disregard the distinct corporate existence of the defendant). The jury could not properly have pierced any corporate veil based upon the evidence produced by Shaffer. If based upon this theory, the admission of this evidence is clearly erroneous and against the logic and effect of the facts and circumstances of this case and against the reasonable inferences to be drawn therefrom. *Lawson v. Haven Hubbard Homes, Inc.* (1990), Ind.App., 551 N.E.2d 855.

Shaffer injected the subject of economic wealth into the case when he introduced evidence about the net worth of the Ramada Hotel Group, which was not the defendant in this suit. While such evidence was not required, Shaffer chose to make the subject an issue in this lawsuit. This evidence, as best we can ascertain from the record, did not logically tend to prove the net worth, or economic wealth of the *Ramada Hotel Operating Company* and was therefore, on the basis of the foundation laid by Shaffer, not adequately shown to be relevant to the issue of punitive damages.

Any link between the Ramada Hotel Group and the *Ramada Hotel Operating Company* is insufficient to tie the net worths of the two entities together. Shaffer failed to show the relevancy foundation necessary to allow the admission of the net worth of the Ramada Hotel Group against this defendant. The *Ramada Hotel Oper-*

*ating Company* objected to the evidence, not with the general objection that the evidence was irrelevant, but with the specific objection that Shaffer sought to introduce evidence about the net worth of someone other than the defendant and that the expert did not know what relationship existed between the two of them. The Ramada Hotel Operating Company was entitled to have the jury's determination rest upon relevant evidence. To the extent practicable, irrelevant evidence, or, in this case, evidence the relevance of which has not been established, should have been excluded. *Truden v. Jacquay* (1985), Ind.App., 480 N.E.2d 974.

To support his contention, Shaffer alleges the assets of the *Ramada Hotel Operating Company* actually subsumed the assets of the Ramada Hotel Group and, for this reason, the net worth evidence of the Ramada Hotel Group was relevant and properly admitted. Shaffer claims the expert testified that the Ramada Hotel Group consisted of all of Ramada, Inc.'s hotel operations except for those which involved its gaming and casino business. He contends this somehow ties the *Ramada Hotel Operating Company* to the Ramada Hotel Group. This is not accurate. The expert actually testified that not only the Ramada Hotel Group but also all of the assets of the subsidiaries were to be sold to a group of investors except for the gaming and casino business. Any indication that the assets of the Ramada Hotel Group included the assets of the *Ramada Hotel Operating Company* sale amounts to nothing more than speculation. Moreover, even if the assets of the *Ramada Hotel Operating Company* could somehow be said to have subsumed the assets of the Ramada Hotel Group, Shaffer still has not shown the nature and extent of the relationship between the two. Without at least some minimum foundation, Shaffer has been allowed to punish the Ramada Hotel Group for the wrongdoing of the *Ramada Hotel Operating Company.*

Shaffer also claims several employees testified they reported to "Ramada" regional supervisors, had "Ramada" business

cards, and entertained "Ramada" executives. He appears to contend that any time "Ramada" appears in the record, we should presume it refers to the defendant. However, the record does not support his position. The parties and the witnesses used the term "Ramada" to mean Ramada Inns, Inc., the Ramada Hotel Group, Ramada, Inc. and the *Ramada Hotel Operating Company*. Although we remain aware of our standard of review, we will not allow the trier of fact to reach a decision based solely upon speculation. Shaffer must be required to lay a proper foundation for assessment of punitive damages against the defendant when he chooses to inject net worth into the case. Shaffer's remaining arguments about the connection between the Ramada Hotel Group and the *Ramada Hotel Operating Company* also amount to speculation. None of the evidence shows how the Ramada Hotel Group relates to the *Ramada Hotel Operating Company*.

Similarly, Shaffer contends the *Ramada Hotel Operating Company* commingled its identity with that of the other entities because all were referred to as "Ramada" and all functioned as a single entity. He therefore reasons that nominal corporate distinctions should be set aside and that we should conclude the jury appropriately considered the net worth of the "Ramada" entity. We do not agree that the evidence shows the entities were alter egos of each other. The record shows that "Ramada" was not a single entity and that Shaffer knew it. The General Manager of the Ramada Inn–Airport testified he worked for the "Ramada" corporation but then moved to a different city where he worked for a "Ramada" franchisee. This itself shows differences in the term "Ramada." Moreover, Shaffer initially brought suit against Ramada Inns, Inc., Ramada, Inc., and the *Ramada Hotel Operating Company* but voluntarily dismissed his complaint against the first two in favor of his suit against the latter. He has shown us he realized that the *Ramada Hotel Operating Company*, not the Ramada Hotel Group or any other "Ramada," was the defendant in his suit. Shaffer was not unjustly defrauded into the belief that any entity with "Ramada" in

its name would be liable for his damages. Also, there is no indication in the record that the *Ramada Hotel Operating Company* was a mere instrumentality of Ramada, Inc., of Ramada Inns, Inc., or of the Ramada Hotel Group. Shaffer could have utilized discovery to define the scope and attributes of the *Ramada Hotel Operating Company* because he knew it did not encompass every entity referred to as "Ramada." Moreover, if Shaffer could have proved the *Ramada Hotel Operating Company* was a mere instrumentality or alter ego of "Ramada," he should have done so but did not.

Further, even if the separate financial statement of Ramada Inns, Inc. contained information about the *Ramada Hotel Operating Company*, as the evidence stands in the record, the extent of the connection between them is an issue about which one could only speculate. While we consistently state that such factors affect the weight to be given the evidence and not its admissibility, here there is such a lack of connection between the two that the use of the term "Ramada" could not be used interchangeably with reference to Ramada Inns, Inc. and the *Ramada Hotel Operating Company*. In short, the tenuous connections Shaffer established among the defendant and the other "Ramadas" are not sufficient to allow a reasonable determination of the *Ramada Hotel Operating Company's* net worth for the calculation of punitive damages.

Shaffer next contends the trial court properly admitted the net worth evidence because the *Ramada Hotel Operating Company* does not publish a separate financial statement but consolidates its financial information with that of Ramada, Inc., from which the expert gleaned the net worth of the Ramada Hotel Group. As noted, the evidence does not show the financial statements were consolidated in this document. The most the evidence shows is that some relationship exists between the Ramada Hotel Group and the *Ramada Hotel Operating Company*. Nevertheless, any failure of the *Ramada Hotel Operating Company* to file a public

financial statement does not excuse the admission of evidence about the Ramada Hotel Group where that entity has been insufficiently tied to the *Ramada Hotel Operating Company.* That some relationship exists is the only indication that the Ramada Hotel Group and the *Ramada Hotel Operating Company* have any connection. Shaffer could have obtained information about *Ramada Hotel Operating Company's* net worth consistent with our discovery rules but evidently chose not to do so. Such an unknown and undetermined financial connection hardly advances the stated purposes of an award of punitive damages. Shaffer introduced evidence about the financial might of Ramada Hotel Group with a connection to the defendant so tenuous that we can only conclude the jury was allowed to punish someone other than the *Ramada Hotel Operating Company.*

■ As noted, the trial court improperly admitted the evidence of the net worth of the Ramada Hotel Group as relevant to prove the net worth of the defendant. Nevertheless, the *Ramada Hotel Operating Company* must show how it sustained prejudicial harm in order to establish grounds for reversal due to the erroneous admission of this evidence. *See Wilson v. Dexter* (1963), 135 Ind.App. 247, 192 N.E.2d 469. No error in the admission of evidence is a ground for reversal on appeal unless refusal to take such action appears to the court inconsistent with substantial justice; also, the court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. Ind. Trial Rule 61.

The admission of the improper evidence in this case cannot be considered harmless because it affected the substantial rights of the defendant. The trial court improperly allowed the expert to testify that the net worth of the Ramada Hotel Group was $279,153,000.00. During closing argument, plaintiff's counsel argued to the jury that it could, for example, punish the *Ramada Hotel Operating Company* for its behavior by awarding Shaffer one percent of the

net worth of the Ramada Hotel Group, or $2,791,530.00. The jury awarded Shaffer this exact amount in punitive damages. The jury obviously based its punitive damage award entirely upon the improper evidence in the manner suggested by plaintiff's counsel in closing argument. This was prejudicial to the *Ramada Hotel Operating Company* because the net worth evidence the jury used to calculate the award should not have been admitted against it. For this reason, the punitive damage award must be reversed.

Shaffer finally claims the *Ramada Hotel Operating Company* could have cleared up any misconceptions about its net worth but chose not to introduce any evidence on any of these matters or on its net worth. However, we refuse to give our blessing to Shaffer to introduce any improper evidence he wishes and then saddle the *Ramada Hotel Operating Company* with the burden to refute it.

While Shaffer provided an insufficient foundation to admit the net worth evidence of the Ramada Hotel Group against the defendant in this case, we do not conclude that the trial court improperly allowed the jury to consider an award of punitive damages. Shaffer provided evidence to address the issues of malice, fraud, gross negligence, or oppression. The *Ramada Hotel Operating Company* countered with evidence that its tortious conduct was merely the result of mistake of law or fact, honest error of judgment, over-zealousness, mere negligence, or other noniniquitous human failing. The evidence given on the issue of punitive damages conflicted.

■ Nothing in the record indicates the jury relied upon the improper evidence to calculate the compensatory damage award. Compensatory damages can stand on their own beside punitive damages, and the reversal of the latter does not necessarily require reversal of the former. If a new trial is required, it shall be limited only to those issues affected by the error unless such relief is shown to be impracticable or unfair. Ind. Appellate Rule 15(N). Because the error which necessitates reversal relates only to punitive damages and not to

compensatory damages, we conclude that fairness dictates we reverse for a new trial on the issue of punitive damages only. *See Crist, Inc. v. Whitacre* (1970), 147 Ind.App. 16, 258 N.E.2d 165, *on rehearing,* 260 N.E.2d 893, *trans. denied* (error necessitating reversal relates only to liability and not the verdict as to the amount of damages, and new trial therefore limited to the issue of liability). *See also, Farm Bureau Mutual Insurance Co. v. Dercach* (1983), Ind. App., 450 N.E.2d 537, *trans. denied* (new trial ordered on the issue of punitive damages).

Judgment reversed on the award of punitive damages, remanded for a new trial on the issue of punitive damages, and affirmed in all other respects.

RATLIFF, C.J., and CHEZEM, J., concur.