Dennis WAUCHOP, Administrator of the
Estate of Susan Wauchop, Deceased,
and as Guardian of the minors Brian
Noonan, Jason Noonan, Patrick Noonan,
and John Noonan, Plaintiffs,

Janet Scott, as mother and natural
guardian of the minor Timothy
Scott, Intervenor Plaintiff,

v.

DOMINO'S PIZZA, INC., Thomas S. Mon-
aghan, Scott Halvorsen, d/b/a Domino's
Pizza, and Christopher Braden, Defen-
dants.

No. S90–496M.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 18, 1993.

Robert J. Pavich, Chicago, IL, for Wau-
chop/Noonan plaintiffs.

Loren B. Siegel, Chicago, IL, for interve-
nor plaintiff Scott.

C. Roy Peterson, Nancy Shaw, Chicago,
IL, Thomas J. Brunner, Jr., Paul J. Peralta,
South Bend, IN, for Domino's Pizza, Inc. and
Thomas S. Monaghan.

Arthur A. May, Joe Jensen, South Bend,
IN, for Scott Halvorsen.

John McQuillan, Terri Springman, Merrill-
ville, IN, for Christopher Braden.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the motion of defendant Thomas S. Monaghan for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. At oral argument on the motion, the plaintiffs requested leave to supplement their summary judgment submission. For the reasons that follow, the court finds that supplementation would be immaterial, and that Mr. Monaghan's motion must be granted.

## I.

Susan Wauchop died as a result of an automobile accident in Granger, Indiana, when her minivan was struck by a car driven by Christopher Braden. At the time of the accident, Mr. Braden was employed at a Domino's Pizza store that was owned and operated by Scott Halvorsen. Domino's Pizza, Inc. did not own or operate Mr. Halvorsen's store, but the store had a franchise agreement with Domino's.

Mr. Monaghan, a director and chief executive officer of Domino's, was not involved with the day-to-day operations of Mr. Halvorsen's store. Mr. Monaghan never had direct contact with Mr. Braden or with anyone else who worked at Mr. Halvorsen's store. Mr. Monaghan never interviewed, hired, trained, or supervised Mr. Braden, and did not schedule Mr. Braden for work. Mr. Braden supplied his own delivery car, which the Halvorsens inspected. Neither Mr. Monaghan nor Domino's owned, supplied, maintained, inspected, or saw Mr. Braden's car.

The standard franchise agreement entered into between Domino's and Mr. Halvorsen contained the following language:

> [T]he store will not offer delivery service to any customer whose order cannot be delivered within thirty (30) minutes of the time when such order is placed, taking into consideration the least favorable driving conditions and your [the franchisee's] strict compliance with all laws, regulations and rules of the road and due care and caution in the operation of delivery vehicles.

Domino's offers a guarantee to customers that provides:

> All Domino's Pizza stores, corporate owned and franchised owned, are to guarantee pizza delivery in 30 minutes or less to every customer serviced. A minimum discount of $3.00 off the sale price, defined as the price normally charged to the customer minus the amount for any advertising special or promotional discount, is to be given to the customer for every order delivered in over 30 minutes. The discount is to be given at the time the late delivery is made and is to apply to all orders of five pizzas or less. Customers are to be informed that the guarantee for orders larger than five pizzas requires a 24 hour notice. The Guarantee Policy is to remain in effect for all stores during all hours of operation with exception given only under the following condition:

> > During times where extremely severe weather conditions make delivery service in less than 30 minutes impossible, the guarantee may be waived only for such time as conditions prevent proper delivery service. In addition, all customers are to be notified at the time their order is taken of the policy postponement, otherwise, the store will be required to honor the guarantee.

> This policy in no way implies that the company expects its employees to act or deliver pizzas in an unsafe manner in order to meet the 30 minute deadline. The Domino's pizza delivery system coupled with limited delivery areas enables drivers to deliver pizzas safely to customers in less than 30 minutes. All delivery personnel are expected to deliver in accordance with company safety policies as well as state and federal traffic laws regardless of the 30 minute delivery guarantee policy.

The plaintiffs brought suit against Mr. Monaghan, among others. They contend that Mr. Monaghan's implementation and maintenance of the policy requiring delivery of pizzas in thirty minutes or less was a contributing cause to the accident. The parties agree that Indiana law governs this diversity case. Mr. Monaghan has moved for summary judgment.

## II.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Duane v. Lane*, 959 F.2d 673, 675 (7th Cir.1992). If that showing is made and the motion's opponents would bear the burden at trial on the matter that forms the basis of the motion, the opponents must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If they fail to do so, summary judgment is proper. *Deutsch v. Burlington Northern R.R. Co.*, 976 F.2d 735 (7th Cir.1992). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponents. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponents. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991).

The court must construe the facts as favorably to the non-moving parties as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving parties, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-moving parties must show that the disputed fact is material, or outcome-determinative, under applicable law. *Kizer v. Children's Learning Center*, 962 F.2d 608, 611 (7th Cir.1992).

The court addresses Mr. Monaghan's motion with the above standards in mind.

## III.

The plaintiffs contend that when the evidence is viewed in the light most favorable to them, the 30–minute policy was Mr. Monaghan's personal policy, not a corporate policy. There was evidence that in May 1992 Mr. Monaghan unilaterally decided to eliminate the 30–minute policy, and then changed his mind and decided to retain the policy. At his deposition, Mr. Monaghan answered affirmatively that if he decided that the 30–minute policy should be dropped, he could make that decision that afternoon.

The plaintiffs also point to other facts that suggest Mr. Monaghan's ability to make important corporate decisions unilaterally. For example, there is evidence intimating that Mr. Monaghan appointed and terminated David Black as president of Domino's without a vote by the board of directors; that Mr. Monaghan unilaterally rearranged Domino's executive team; that Mr. Monaghan could not recall any written corporate policies regarding decision-making; and that a holding company that Mr. Monaghan and his family own has near total control over the stock of Domino's. The plaintiffs assert that Domino's is nothing more than a "large, one-man operation, and the man responsible is Thomas Monaghan."

When the facts are viewed, and all inferences drawn, as favorably to the plaintiffs as the record will permit, the court finds a genuine issue of fact as to whether Mr. Monaghan had the power to unilaterally enact and/or eliminate the 30–minute policy. Accordingly, the court assumes, for summary judgment purposes, that Mr. Monaghan had the power to implement or eliminate the 30–minute policy. Further, for purposes of this motion only, the court also assumes that the 30–minute policy was a contributing cause to the accident between Mr. Braden and Susan Wauchop.[1] The question remains whether Mr. Monaghan's enactment or maintenance of such a policy renders him potentially liable for negligence.

■ The plaintiffs agree that Mr. Monaghan cannot be held personally liable for the

---

1. The court does not decide whether the 30–minute policy was a contributing cause of the

collision. The parties did not address that issue specifically.

accident merely because of his office or holdings; some additional connection with the accident is required. They maintain that the additional connection exists in this case because Mr. Monaghan is responsible for the 30–minute policy, and is the only person with the authority to eliminate the policy. The plaintiffs maintain that when corporate officers participate in or authorize the commission of a wrongful act, they are liable even if they act on the company's behalf. They argue that the wrongful act in this case was Mr. Monaghan's imposition of the 30–minute policy.

All parties agree that Indiana's courts have not yet decided a case in which a corporate official is sought to be held liable for establishment of a policy. Accordingly, it becomes this court's task to determine how the issue would be decided if presented today to the Indiana Supreme Court. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Ross v. Creighton University,* 957 F.2d 410, 413 (7th Cir.1992).

Under Indiana law, it is well settled that a corporate stockholder, director, or officer is not personally liable for the torts of the corporation or any of its agents merely because of his or her office or holdings; some additional connection with the tort is required. *Roake v. Christensen,* 528 N.E.2d 789, 791–92 (Ind.Ct.App.1988); *Bowling v. Holdeman,* 413 N.E.2d 1010, 1014 (Ind.Ct. App.1980); *Birt v. St. Mary Mercy Hospital of Gary, Inc.,* 175 Ind.App. 32, 370 N.E.2d 379, 383 (1978); *see also* 3A *Fletcher Cyclopedia Corporations* Ch. 11, § 1137 (Perm. ed. 1986).

■ Indiana's courts have demonstrated respect for the corporation as a shield against personal liability. One of the principal purposes of the corporate form of business organization is to limit the capital at risk to that invested in the corporation, and to protect shareholders' other assets from exposure to liability arising out of corporate activities. Indiana courts are reluctant to disregard corporate entities, but will do so to protect innocent third parties from fraud or injustice. *Gurnik v. Lee,* 587 N.E.2d 706, 710 (Ind.Ct.App.1992); *Stacey–Rand, Inc. v.*

*J.J. Holman, Inc.,* 527 N.E.2d 726, 728 (Ind. Ct.App.1988).

■ The plaintiffs disclaim any effort to pierce the corporate veil, but Indiana law on that topic remains meaningful in predicting how the Indiana Supreme Court would decide this case. One seeking to pierce the corporate veil bears the burden to show that the corporate form was so ignored that it was merely another's instrumentality, and that the misuse of the corporate form would constitute fraud or promote injustice. *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d 1074, 1080 (Ind.Ct.App.1992); *Gurnik v. Lee,* 587 N.E.2d at 710. While no single factor justifies piercing the corporate veil in Indiana, careful review of the entire relationship between various corporate entities and their directors and officers may reveal that such equitable action is warranted. *Stacey–Rand, Inc. v. J.J. Holman, Inc.,* 527 N.E.2d at 728. Directors and officers generally are not individually liable for a corporation's debts, but the court may disregard the corporate entity to avoid injustice if the officer has demonstrated disregard of the corporate form, treating the corporation essentially as a conduit for personal business affairs. *Weeks v. Kerr,* 486 N.E.2d 10, 12 (Ind.Ct.App.1985).

■ Consistent with these principles, Indiana courts require sufficient evidence to allow a "careful, thoughtful review of the entire relationship", *Ramada Hotel Operating Co. v. Shaffer,* 576 N.E.2d 1264, 1268, *clarified on reh'g,* 580 N.E.2d 306 (Ind.Ct. App.1991), and require something beyond even domination and control by a sole shareholder entitled to all corporate profits, such as an initial intention that the corporation would be no more than an "alter ego". *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d at 1081.

Indiana courts have found corporate officials liable for acts taken in the course of their employment, but in each of the cases cited by the plaintiffs, the corporate officer or director actually engaged in unlawful or tortious activities.

The defendant's liability in *Tolliver v. Mathas,* 538 N.E.2d 971 (Ind.Ct.App.1989), did not arise because he was a corporate presi-

dent or corporate agent, but rather because he personally had made fraudulent representations. In *Roake v. Christensen,* 528 N.E.2d 789, 792 (Ind.Ct.App.1988), the court found that although the defendant corporate president was aware that the corporation's group insurance policy had terminated, he nevertheless continued to accept the plaintiff's premium payments. Because the defendant was the sole participant in these acts, he could be held personally liable for conversion. In *American Independent Management Systems, Inc. v. McDaniel,* 443 N.E.2d 98, 103 (Ind.Ct.App.1982), the defendant corporate officer was held liable because he personally made fraudulent representations. These cases provide no support for the claim against Mr. Monaghan, who did not drive the car that killed Susan Wauchop.

This review of Indiana case law provides no basis from which this court can predict that the Indiana Supreme Court would hold that a corporate official may be personally liable for others' acts taken in response to implementation of a corporate policy, even if the defendant official controlled the decision to adopt the policy. The Indiana Supreme Court might reach such a conclusion through a break with prior law, but such predictions are not for this court to make. The Seventh Circuit has cautioned district courts not to speculate on trends in state law, *Nelson v. Monroe Regional Medical Center,* 925 F.2d 1555, 1561 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991), or to extend state law into novel areas, *Railway Exp. Agency, Inc. v. Super Scale Models, Ltd.,* 934 F.2d 135, 138 (7th Cir.1991). Further,

> This policy applies with special force to a plaintiff in a diversity case who has chosen to litigate his state law claim in federal court. We write only to emphasize that our policy will continue to be one that requires plaintiffs desirous of succeeding on novel state law claims to present those claims initially in state court.

*Shaw v. Republic Drill Corp.,* 810 F.2d 149, 150 (7th Cir.1987).

Mr. Monaghan cited case law from other jurisdictions that holds that their mere enactment or approval of a policy for the corporation cannot render a corporate officer personally liable unless the policy itself is unlawful, wrongful, or tortious. *General Motors Acceptance Corp. v. Bates,* 954 F.2d 1081, 1085 (5th Cir.1992); *Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir.1980); *LCL Theatres v. Columbia Pictures Indus., Inc.,* 619 F.2d 455 (5th Cir.1980). When, at oral argument, the court expressed a tentative intention to give the plaintiffs the benefit of this broader range of liability, but further expressed the opinion that the record would not allow a finding that the 30–minute policy was unlawful, wrongful, or tortious, the plaintiffs asked leave to supplement the summary judgment record to support their contention that the 30–minute policy was inherently dangerous, and hence tortious.

The court does not believe that Indiana law would view the case any differently if the policy at issue were shown to be tortious due to dangerousness. Indiana case law has not approached the holdings of other jurisdictions that causing a tortious corporate policy may render a corporate official personally liable. That is not the law of Indiana; based on the authorities cited above, it is not this court's role to make it the law of Indiana. Accordingly, the plaintiffs' supplementation would have no impact on the propriety of summary judgment.

### IV.

Accordingly, defendant Thomas Monaghan's motion for summary judgment must be, and hereby is, GRANTED.

SO ORDERED.