**UNITED STATES of America, Plaintiff,**

v.

**SEBRING HOMES CORPORATION, et al., Defendants.**

**No. 3:93–CV–248RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 20, 1994.

Clifford D. Johnson, Office of U.S. Atty., South Bend, IN, Mark T. Quinlivan, U.S. Dept. of Justice Civ. Div., Arthur R. Goldberg, U.S. Dept. of Justice Federal Programs Branch—Civ. Div., Washington, DC, for plaintiff U.S.

Max K. Walker, Jr., Terry C. Shewmaker, Cosentino Walker Shewmaker and Christofeno, Elkhart, IN, for defendants Sebring Homes Corp., Martin Ornatowski, and Darlene Ornatowski.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion of the plaintiff for partial summary judgment as to liability. Defendants Sebring Homes Corporation, Martin Ornatowski, and Darlene Ornatowski have responded collectively. The court denies the plaintiff's motion for oral argument because the parties' briefs suffice to enable the court to decide the summary judgment motion. For the following reasons, the court grants the plaintiff's motion for partial summary judgment as to the liability of Sebring Homes, but denies the motion with respect to the Ornatowskis.

### I.

The United States brought this action for civil penalties and injunctive relief for violations of the National Manufactured Housing Construction and Safety Standards Act of 1974 ("the Act"). 42 U.S.C. § 5401 *et seq.* The court adopts the following facts, which the court does not understand to be in dispute, from the United States' memorandum in support of its summary judgment motion, at 4–5:

> Defendant Sebring Homes ... is a corporation incorporated in the State of Indiana, with its principal place of business in Elkhart, Indiana.... Among other things, Sebring Homes manufactured and sold "park models," which are manufactured homes of 400 square feet or less with full living quarters on one frame.

Defendant Martin Ornatowski served as Vice-President of Sebring Homes. His wife, defendant Darlene Ornatowski, served as President of Sebring Homes. Before his involvement with Sebring Homes, Mr. Ornatowski had founded Hampton Homes Corporation ("Hampton Homes"), also located in Elkhart, Indiana. Like Sebring Homes, Hampton Homes was engaged in the manufacture and sale of park models. Hampton Homes was bought out by Sebring Homes, and Sebring Homes moved into the Hampton Homes plant in Elkhart, Indiana.

Between 1990 and 1992, Sebring Homes manufactured at least 98 park models for Resort Homes, Inc. ("Resort Homes"), a company in Maryland, that did not meet the criteria for recreational vehicles set

forth in 24 C.F.R. Section 3282.8(g)[1]. Specifically, for each of the 98 park models sold to Resort Homes, Sebring Homes manufactured an add-on that was designed or produced as an integral part of the park model. Each of these 98 park model and add-on combination units was a manufactured home over 400 square feet. None of the 98 combination units were built in accordance with the manufactured home construction and safety standards set forth in 21 C.F.R., Part 3280, as required by 42 U.S.C. Section 5409(a)(1). In addition, none of the 98 combination units were issued the certification required by 42 U.S.C. Sections 5409(a)–(4) and 5415.

It also is undisputed that, at Sebring Homes' creation, the Ornatowskis held 500 of the 600 shares of Sebring Homes' stock, and the entire capital base for Sebring initially came solely from funds saved by the Ornatowskis. It is further undisputed that the Ornatowskis made a $35,000.00 capital contribution to Sebring in 1992 for "overhead and operating expenses," and made a $15,000.00 secured loan to Sebring in 1992, as well as making various unsecured loans to Sebring "off and on."

In addition to serving Sebring as its president, Mrs. Ornatowski also served as its chief financial officer, handling the balance of the corporation's financial matters, including its payroll, banking activities, insurance, basic accounting, as well as paying the corporation's bills. Mr. Ornatowski served as the vice-president and general manager of Sebring, running the direction of the company on a day-to-day basis.

## II.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted where

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). No genuine issue of material fact exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The court must view the record and draw all reasonable inferences from the evidence in favor of the non-moving party, and where a fact is disputed, the non-moving party must show that the disputed fact is material under the applicable law. *Hartford Acc. & Indem. Co. v. Chicago Housing Authority,* 12 F.3d 92, 95 (7th Cir.1993); *Titran v. Ackman,* 893 F.2d 145 (7th Cir.1990); *Conery v. Bath Assoc.,* 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992); *see also Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1001 (7th Cir.1994) ("Rule 56 requires the party opposing a summary judgment motion to come forward with some evidence showing the existence of ... a factual dispute."). The non-movant's allegations must be taken as true and given the benefit of the doubt when in conflict with those alleged by the party moving for summary judgment. *Bishop v. Wood,* 426 U.S. 341, 347–48, 96 S.Ct. 2074, 2078–79, 48 L.Ed.2d 684 (1976); *Thornton v. Evans,* 692 F.2d 1064, 1074–75 (7th Cir.1982).

## III.

The defendants concede that the United States is entitled to partial summary judgment as to liability as against Sebring Homes, and that none of the 98 combination units constructed by Sebring were built in accordance with the manufactured home construction and safety standards set forth in 24 C.F.R., Part 3280, as required by 42 U.S.C.

---

1. In their Statement of Material Facts, the defendants dispute that the 98 park models did not meet the criteria for recreational vehicles set forth in 24 C.F.R. § 3282.8(g). *See* Defendants' Statement of Material Facts, at ¶ 2. However, Mr. Ornatowski answered a request for admission at his deposition stating that the units failed to meet the requirements for recreational vehicles. *See* M. Ornatowski Dep., at 89–91. Regardless, the issue is mooted by Sebring Homes' concession as to liability.

§ 5409(a)(1). Therefore, the plaintiff's motion for partial summary judgment as to liability should be, and hereby is, GRANTED as against defendant Sebring Homes.

### IV.

The United States also moves for partial summary judgment against Martin and Darlene Ornatowski. Unlike Sebring, the Ornatowskis have not conceded liability for the violations. The United States argues that the Ornatowskis are individually liable under the Act under two theories: first, that the Ornatowskis are liable as "distributors" or "manufacturers" under the Act so as to not frustrate the legislative purpose of the Act; and second, that Indiana law would allow the court to "pierce the corporate veil" to extend liability to the Ornatowskis as the sole shareholders, officers, and directors of Sebring.

### A.

The United States couches its first argument in terms of whether the Ornatowskis may be deemed "manufacturers"[2] or "distributors"[3] under the Act. Whether the Ornatowskis qualify as distributors is largely irrelevant for the purposes of this discussion, because 42 U.S.C. § 5409(a) expressly states:

No person shall—

(1) manufacture for sale, lease, sell, offer for sale or lease, or introduce or deliver, or import into the United States, any manufactured home which is manufactured on or after the effective date of any applicable Federal manufactured home construction and safety standard under this chapter and which does not comply with such standard [or] (4) fail to issue a certification required by section 5415 of this title....

42 U.S.C. § 5409(a)(1) and (4).

Likewise, 42 U.S.C. § 5415 states that "[e]very manufacturer of manufactured homes" shall furnish the required certification of compliance with the federal construction and safety standards. Thus, liability is contingent upon whether the Ornatowskis are "persons" for purposes of § 5409(a), or "manufacturers" for purposes of § 5415. Looking to the definition of manufacturer provided by the Act ("means any person"), the question narrows to whether the Ornatowskis may individually qualify as a "person" under the Act.

The Act does not define "person", but the term is defined by the Dictionary Act, which states that:

In determining the meaning of any Act of Congress, unless the context indicates otherwise—

... the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals....

1 U.S.C. § 1.

Thus, had the Ornatowskis acted in their personal capacities, as opposed to as officers and agents of Sebring Homes, they clearly would be liable as "persons" under the Act. However, as the United States acknowledges, the Dictionary Act is silent as to whether the term "individual" may include a corporate officer, director, or shareholder. Thus, the Dictionary Act does not resolve whether the Ornatowskis may be held liable as "individuals" despite the protection of limited liability they enjoy as being mere officers, directors, or shareholders of the corporation.

The United States argues that the Supreme Court has "consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies." *First National City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 630, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983); *see also Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974) ("Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of

---

**2.** The Act defines a "manufacturer" as "any person engaged in manufacturing or assembling manufactured homes...." 42 U.S.C. § 5402(5).

**3.** The Act defines "distributor" as "any person engaged in the sale and distribution of manufactured homes for resale...." 42 U.S.C. § 5402(4).

justice where it is used to defeat an over-riding public policy."). To support this argument, the United States suggests that it is not uncommon for federal courts to hold individuals liable despite the protection of the corporate form in highly regulated areas. For example, the Fourth and Tenth Circuits have extended liability to officers and directors of corporations for violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701 *et seq. See Kemp v. Peterson,* 940 F.2d 110, 113 (4th Cir.1991) (officers and directors may be individually liable if "to hold otherwise would defeat the purpose of the Act, since it is the officers of the corporation who are behind the alleged fraud"); *McCown v. Heidler,* 527 F.2d 204, 207 (10th Cir.1975) (officers and directors liable if to do otherwise would leave the Act "pragmatically barren").

The court believes the United States' reliance on such cases is misplaced. In both *Kemp* and *McCown,* the courts based their decisions on an interpretation of ILSFDA that intended to stretch the liability under ILSFDA to reach actual wrongdoers. This was done because ILSFDA "is designed to prevent fraud and deception in the sale of the undeveloped land." *Kemp v. Peterson,* 940 F.2d at 112. In each case, the individuals held liable participated in fraud. The *Kemp* court pierced the corporation's limited liability "since it is the officers of the corporation who are behind the alleged fraud." 940 F.2d at 113. Likewise, in *McCown,* the court reasoned that for the Act to protect against fraud, the protection of the Act "must be leveled against the fraudulent planners and profit makers for otherwise the Act would be pragmatically barren." *McCown v. Heidler,* 527 F.2d at 207. The United States has not suggested that the purpose of the National Manufactured Housing Construction and Safety Standards Act of 1974 was enacted to prevent fraudulent transactions, nor has it argued that any of the actions of the Ornatowskis were fraudulent in nature. Thus, the basis for attaching liability to a corporate officer or director as utilized in *Kemp* and *McCown* is inapplicable here.

The United States also argues that cases construing the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* are analogous to this case, but as the United States acknowledges, those cases merely interpret the term "employer" under to include those who are actually responsible for the infring-ing acts. Thus, in *Riordan v. Kempiners,* 831 F.2d 690 (7th Cir.1987), the court construed the term "employer" to include employees as long as they had "supervisory authority . . . and [were] responsible in whole or in part for the alleged violation." 831 F.2d at 694.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Thus, the statute explicitly includes within its definition of "employer" individuals other than the actual employer as long as they have acted in the interests of the employer. This statutory language supports ignoring corporate form in order to attach liability under the FLSA to an individual that "act[s] directly or indirectly in the interest of an employer." Courts disregard the limited liability of incorporation and extend liability under the FLSA to corporate officers and directors only if they fall under the definition of "employer." In doing so, courts have been guided by a strong history of precedents liberally construing the FLSA so as to further its remedial goal of protecting the nation's workers. *See Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); *Donovan v. Grim Hotel Company,* 747 F.2d 966, 971 (5th Cir.1984).

The National Manufactured Housing Construction and Safety Standards Act of 1974, in contrast, lacks the FLSA's strong precedential history of liberal construction and does not expressly extend individual liability to "any person acting directly or indirectly in the interest of" a manufacturer. To extend that construction to a liberal reading of the terms "manufacturer" or "person" under the Act would be inappropriate here, at least in the absence of some evidence of culpability or fraud.

This point is further played out in the third statutory scheme advanced by the United States as analogous to the instant situation. The United States asserts that the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, also allows for extending liability to a corporate officer or director. The cases cited by the United States, however, again demonstrate that courts disregard the shield of incorporation not because it will merely further the statute's goals, but because it is also necessary to do so to attach liability to the actual wrongdoers.

For example, in *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987), the Second Circuit disregarded the corporate form because "[p]arties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control." 829 F.2d at 1220. In *Alman v. Danin*, 801 F.2d 1 (1st Cir.1986), the First Circuit extended liability to a corporation's incorporators based not only on the small respect paid by the shareholders to the corporation's identity and the degree of injustice resulting from recognizing the corporate form, but also on the incorporator's fraudulent intent of the incorporators, 801 F.2d at 4.

The United States has not asserted that the Ornatowskis have engaged in "shell-game-like" maneuvers or self-dealing, or have acted with fraudulent intent. Therefore, the court finds this argument unpersuasive.

The Supreme Court cases cited by the plaintiff do not alter this conclusion. Although *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) and *Bangor Punta Operations v. Bangor & Aroostook Railroad Co.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) stand for the proposition that "the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy," 417 U.S. at 713, 94 S.Ct. at 2584, this is not always true absent evidence of a "deliberate attempt to flout legislative policy." *Evans Products Company v. I.C.C.*, 729 F.2d 1107, 1110 (7th Cir.1984) (after viewing the totality of the circumstances, and where no evidence is presented to show that the separate corporate structure was maintained to avoid a clear legislative purpose or to defeat an overriding public policy, court will not reverse Interstate Commerce Commission's decision not to disregard the corporate form) (citing *Bangor Punta Operations v. Bangor & Aroostook Railroad Company*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974)); *see also Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544 (Fed.Cir.1990) (officers of corporation not liable for inducing infringement of a patent where the officers were unaware of patent until suit was filed, and where subsequent violations were predicated upon a good-faith belief, based on advice of counsel, that corporation's product was not an infringement).

■ The evidence before the court, viewed most favorably toward the defendants, is that Sebring Homes violated the regulations predicated upon the corporate officers' (Mr. and Mrs. Ornatowski) good faith belief that they were in compliance with all applicable regulations, based upon advice of a third-party consulting firm. At the Ornatowskis' direction, Sebring Homes immediately ceased manufacture of the non-complying units upon being notified by the office of Housing and Urban development that the units violated the Act. From these facts, a reasonable factfinder could decide that Sebring's separate corporate structure was neither maintained to avoid a clear legislative purpose nor to defeat an overriding public policy, nor was there a "deliberate attempt to flout legislative policy." *Evans Products Company v. I.C.C.*, 729 F.2d at 1110.

■ The United States has not shown any level of personal culpability on the Ornatowskis' part other than mere control of the corporation. The court believes something more than this is required.

### B.

As a second argument for extending liability to the Ornatowskis, the United States asserts that, under Indiana law, Sebring was the mere alter ego of the Ornatowskis, thus allowing the court to "pierce the corporate veil."

Indiana's courts have demonstrated respect for the corporation as a shield

against personal liability. One of the principal purposes of the corporate form of business organization is to limit the capital at risk to that invested in the corporation, and to protect shareholders other assets from exposure to liability arising out of the corporate activities. Indiana courts are reluctant to disregard corporate entities, but will do so to protect innocent third parties from fraud or injustice. *Gurnik v. Lee,* 587 N.E.2d 706, 710 (Ind.Ct.App. 1992); *Stacey–Rand, Inc. v. J.J. Holman, Inc.,* 527 N.E.2d 726, 728 (Ind.Ct.App. 1988).

\* \* \* \* \* \*

One seeking to pierce the corporate veil bears the burden to show that it was merely another's instrumentality, and that the misuse of the corporate form would constitute fraud or promote injustice. *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d 1074, 1080 (Ind.Ct.App.1992); *Gurnik v. Lee,* 587 N.E.2d at 710. While no single factor justifies piercing the corporate veil in Indiana, careful review of the entire relationship between various corporate entities and their directors and officers may reveal that such equitable action is warranted. *Stacey–Rand, Inc. v. J.J. Holman, Inc.,* 527 N.E.2d at 728. Directors and officers generally are not individually liable for a corporation's debts, but the court may disregard the corporate entity to avoid injustice if the officer has demonstrated disregard of the corporate form, treating the corporation essentially as a conduit for personal business affairs. *Weeks v. Kerr,* 486 N.E.2d 10, 12 (Ind.Ct. App.1985).

Consistent with these principles, Indiana courts require sufficient evidence to allow a "careful, thoughtful review of the entire relationship," *Ramada Hotel Operating Co. v. Shaffer,* 576 N.E.2d 1264, 1268, *clarified on reh'g,* 580 N.E.2d 306 (Ind.Ct.App. 1991), and require something beyond even domination and control by a sole shareholder entitled to all corporate profits, such as an initial intention that the corporation would be no more than an "alter ego". *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d at 1081.

*Wauchop v. Domino's Pizza, Inc.,* 832 F.Supp. 1572, 1575 (N.D.Ind.1993).

■ The United States has not presented "sufficient evidence" exhibiting a justification for piercing the corporate veil. It is undisputed that, at least at the outset, the Ornatowskis held 500 of the 600 shares of Sebring stock. Sebring's entire capital base initially came solely from the money saved by the Ornatowskis. It is further undisputed that in addition to serving Sebring as its president, Mrs. Ornatowski served as its chief financial officer, handling the balance of the corporation's financial matters, including its payroll, banking activities, insurance, basic accounting, as well as paying the corporation's bills. And, in addition to serving Sebring as its vice-president, Mr. Ornatowski served as its general manager and ran the direction of the company on a day-to-day basis.

None of these facts justify the extreme act of piercing the corporate veil, for the evidence must show "something beyond even domination and control by a sole shareholder entitled to all corporate profits, such as an initial intention that the corporation would be no more than an 'alter ego'." *Wauchop v. Domino's Pizza, Inc.,* 832 F.Supp. at 1575 (citing *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d at 1081). The United States has offered no evidence that exhibits this requisite "initial intention" on the part of either of the Ornatowskis.

The Indiana Supreme Court most recently stated that "[t]he burden is on the party seeking to pierce the corporate veil ... to establish 'that the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another....'" *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1232, 1994 Ind. LEXIS 92, at \*8–9 (Ind.1994) (quoting *Gurnik v. Lee,* 587 N.E.2d 706, 710 (Ind.Ct.App.1992)). When viewed so as to draw all reasonable inferences from the evidence in favor of the non-moving party, *Hartford Acc. & Indem. Co. v. Chicago Housing Authority,* 12 F.3d at 95, the materials offered by the United States

are insufficient to justify such a determination.

The United States asserts that the Ornatowskis operated Sebring in an undercapitalized state, citing a $35,000.00 capital contribution to Sebring made by the Ornatowskis in 1992 for "overhead and operating expenses," and a $15,000.00 secured loan made by the Ornatowskis to Sebring in 1992, as well as various unsecured loans made by the Ornatowskis to Sebring "off and on." Without further explanation, however, these facts are not "sufficient evidence to allow a 'careful, thoughtful review of the entire relationship.'" *Wauchop v. Domino's Pizza*, 832 F.Supp. at 1575 (citing *Ramada Hotel Operating Co. v. Shaffer*, 576 N.E.2d at 1268).

It is doubtful that Indiana courts view the state of capitalization in a corporation as a meaningful factor. In *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232, 1994 Ind. LEXIS 92, at *8–9, the Indiana Supreme Court stated that "factors to be considered include whether the corporate form has been adhered to, whether corporate assets are treated as such or as personal assets, and whether there has been an attempt to deceive third parties." *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1232, 1994 Ind. LEXIS 92, at *9 (citations omitted). The record contains no evidence that the Ornatowskis failed to respect the corporate form of Sebring. The United States asserts that Mr. Ornatowski exercised control of the corporation beyond what is spelled out in corporate by-laws for the vice-president, but this would not seem offensive the corporate form unless Mr. Ornatowski performed duties reserved to other corporate officers; one does not supplant a corporation by doing more than one is required to do. The record does not contain the corporate by-laws. Although the Ornatowskis made capital contributions and loans to Sebring from their personal assets, the record does not indicate that the Ornatowskis treated corporate assets as their own. Finally, the United States has not argued that the Ornatowskis attempted to defraud or deceive any third parties at any time. Although this list is not necessarily exclusive, the Indiana courts do not appear to place significant reliance upon the particular factor of inadequate capitalization.

When a "court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry." *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1232, 1994 Ind. LEXIS 92, at *9. Thus, viewing the undisputed facts most favorably towards the defendants, and making reasonable inferences from those facts in favor of the defendants, the court finds that there is inadequate evidence to a justify the extreme measure of piercing the corporate veil of Sebring to extend liability to Martin and Darlene Ornatowski.

## V.

For the foregoing reasons, the court:

(1) DENIES the plaintiff's motion for oral argument (filed June 28, 1994 (# 23)); and

(2) GRANTS IN PART and DENIES IN PART the plaintiff's motion for partial summary judgment (filed June 28, 1994 (# 19)) as follows:

(a) the motion is GRANTED with respect to liability as to defendant Sebring Homes Corporation;

(b) the motion is DENIED with respect to liability as to defendant Martin Ornatowski;

(c) the motion is DENIED with respect to liability as to defendant Darlene Ornatowski.

SO ORDERED.