

FILED

Feb 03 2015, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Mary Stuart White
Stanley L. White
White & White, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

R. Steven Johnson
Sacopulos, Johnson & Sacopulos
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nick Hunckler,

*Appellant-Plaintiff,*

v.

Air Sorce-1, Inc., Timothy Miller and Kelly A. Brannen,

*Appellees-Defendants*

February 3, 2015

Court of Appeals Case No. 84A01-1405-CT-217

Appeal from the Vigo Superior Court.
The Honorable Michael J. Lewis, Judge.
Cause No. 84D06-1209-CT-8684

**Baker, Judge.**

Nick Hunckler appeals the trial court's grant of summary judgment in favor of appellees Timothy Miller and Air Sorce-1, Inc., (Air Sorce-1) regarding his personal injury claim. Finding that material issues of fact exist, thereby precluding summary judgment, we reverse and remand for proceedings consistent with this opinion.

## Facts[1]

At the time the action arose, Miller was the president and only employee of Air Sorce-1, an incorporated heating and air conditioning business located in Terre Haute. At some point before October 20, 2010, Miller sold a new furnace to Kelly Brannen.[2] Prior to that sale, Miller visited Brannen's home to inspect the basement, where the new furnace would be installed.

Miller delivered a new furnace to Brannen's home on October 20, 2010. At that time, Hunckler was living with Brannen. He was home when the furnace was delivered. Miller arrived with a friend who had a bad back and intended to move the furnace himself. Miller was planning to slide the furnace down the basement stairs without help, a procedure he had done many times. Miller

---

[1] We heard oral argument on December 16, 2014, in the courtroom of the Indiana Court of Appeals in Indianapolis. We thank counsel for their informative and illustrative oral advocacy.

[2] Brannen was a defendant to Hunckler's personal injury action. She filed a separate motion for summary judgment, which was granted. Hunckler does not appeal the grant of summary judgment in favor of Brannen.

asked Hunckler if he would help him move the furnace down to the basement.[3] At the time of the delivery, Brannen was upstairs in the dining room using her computer. She did not witness the two men attempt to move the furnace into the basement.

[4] The two men prepared to slide the furnace down the stairs, entering through the laundry room. Miller went down the stairs first, backwards, supporting the bottom of the furnace. Hunckler waited at the top of the stairs in the laundry room, planning to lift the furnace to help carry it down the stairs. He initially grabbed the top sides of the furnace, but felt he needed a better grip on the furnace before continuing down the stairs. The top of the furnace was open, with four edges of sheet metal. When Hunckler moved his hand to better grip the furnace at its top edges, he thought it was being pulled away from him as though Miller had taken a step down the stairs. Hunckler then fell into the furnace and his hands came into contact with the metal edges. It was approximately ten seconds from the time that Hunckler placed his hands on the furnace that he was injured. The two men did not even move the furnace one step down the stairs.

[5] At this point, Brannen heard the commotion, and Hunckler and Miller came into the dining room. Brannen observed that Hunckler was bleeding from his

---

[3] At oral argument, both parties stipulated that Miller had asked Hunkler to help him move the furnace down the stairs.

hands. Brannen drove Hunckler to the hospital; Miller accompanied them and assisted Hunckler with his bleeding hands.

[6] As a result of this incident, Hunckler sustained serious injuries to the webbing on his hands between his thumbs and palms. His left hand was more seriously injured; it has required four surgeries as well as physical therapy to treat his left palm. The movement and use of his left hand remains impaired.

[7] On September 10, 2012, Hunckler filed a personal injury action alleging negligence against Miller and Air Sorce-1. On October 4, 2012, Miller and Air Sorce-1 filed their answer and named Brannen as a liable non-party. On October 15, 2012, Hunckler filed an amended complaint adding Brannen as a defendant. Miller and Air Sorce-1 filed a motion for summary judgment on February 7, 2014, and Hunckler filed his response opposing the motion on March 5, 2012.

[8] The trial court held a hearing on the motion for summary judgment on May 1, 2014. The trial court entered an order summarily granting Miller and Air Sorce-1's motion for summary judgment. Hunckler now appeals.

## Discussion and Decision

[9] When we review the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010). Summary judgment is appropriate only where the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and

reasonable inferences drawn from those facts are construed in favor of the non-moving party, and all doubts concerning the existence of a material issue must be resolved against the non-moving party. *Id.* Nevertheless, the trial court's grant of summary judgment "enters appellate review clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Trustcorp Mortg. Co. v. Metro Mortg. Co. Inc.*, 867 N.E.2d 203, 211 (Ind. Ct. App. 2007).

[10] Hunckler argues that the trial court erred when it granted summary judgment in favor of Miller and Air Sorce-1. He contends that the trial court erred in determining that he was a "volunteer" and maintains that the trial court erred in applying the volunteer duty of care as stated in *Thompson v. Owen*, 141 Ind. App. 190, 218 N.E.2d 351 (Ind. Ct. App. 1966), to his negligence claim.[4][5]

[11] Hunckler argues that the trial court misapplied *Thompson*, because the standard articulated therein is only applicable in premises liability cases. Both parties agree that this is not a premises liability case. In *Thompson*, Becky Owen asked Thompson to help her start her father's lawnmower as she was attempting to

---

[4] The trial court's order granting summary judgment does not state the legal authority upon which the trial court relied. However, as both parties assert that the trial court relied on *Thompson*, we will proceed under that assumption.

[5] We also note that *Thompson* is not binding precedent, as Judge Smith dissented and Judge Hunter concurred only in result. At the time *Thompson* was decided, this Court was the Indiana Appellate Court, and it decided cases in panels of four. Therefore, as *Thompson* was a split decision, we question whether it was ever binding precedent. However, we will address this case so as to render our holding regarding the continued applicability of the volunteer doctrine.

mow the lawn of a home two doors down from her own. *Id.* at 196, 355. Thompson did so, and was injured when the lawnmower jerked and ran over his foot; he subsequently sued Becky's father for damages. *Id.* Thompson was aware that the lawnmower might have a faulty belt when he agreed to help. *Id.* It was determined that there was no evidence that a faulty belt contributed to Thompson's injuries. *Id.* at 200, 357. The *Thompson* Court found that Thompson was a volunteer and held that "the rule is well established by case law in this state that, unless [there is] proof of wilful [sic] injury, a volunteer cannot recover." *Id.* at 201, 358.

[12] Hunckler argues that *Thompson* does not apply to him because the case at bar is not a premises liability case. Miller concedes that this is not a premises liability case, but argues that the volunteer doctrine is not limited to premises liability cases. In May 2001, the Supreme Court of Michigan addressed the continued relevance of the volunteer doctrine, and abandoned it entirely. *James v. Alberts*, 626 N.W.2d 158, 161-162 (Mich. 2001). It stated that it would "return this area of law to traditional agency and tort principles, comfortable that they will better resolve the matters to which the doctrine might have applied." *Id.* at 162.

[13] We now adopt the same approach. We will continue to rely on traditional tort and agency principles and, to the extent it was ever applied, abandon the volunteer doctrine. Therefore, it follows that ordinary negligence principles apply in the instant case. We find that there are genuine issues of material fact as to duty, causation, breach, and damages.

[14] Moving on to the second issue before us, we address Miller's argument that he is not personally liable for any damages that Hunckler might have incurred as a result of his negligence. Miller argues that he is not personally liable because Hunkler has failed to present any evidence to pierce the corporate veil. He maintains that Indiana law imposing liability on a shareholder or officer of a corporation is limited to cases of fraud or injustice.

[15] In support of his argument, Miller cites to several Indiana cases. He first points us to *Birt v. St. Mary Mercy Hospital of Gary, Inc.*, 175 Ind. App. 32, 370 N.E.2d 379 (Ind. Ct. App. 1977). In *Birt*, this Court affirmed a grant of summary judgment in favor of non-treating physicians on Birt's malpractice claim. Id. at 43, 385. The trial court in *Birt* found that the individual non-treating physicians had not been involved in Birt's treatment or present when the malpractice occurred. *Id.* at 34, 380. This Court held that no vicarious liability arose solely because the physicians were associated under the Indiana Medical Professional Corporation Act. *Id.* at 43, 385. Likewise, in the second case Miller cites to, *Wauchop v. Domino's Pizza Inc.*, 832 F.Supp. 1572, (N.D. Ind. 1993), the district court held that, under Indiana law, the CEO could not be held personally liable in connection with an automobile accident caused by an employee. Miller points us to the district court's holding that "it is well settled that a corporate stockholder, director or officer is not personally liable for the torts of the corporation or any of its agents merely because of his or her office or holdings; some additional connection with the tort is required." *Id.* at 1575.

[16] It is clear that the above cases do not apply to the facts in the case at bar. Both of those cases involve a situation in which one person commits a tort and the plaintiff seeks to hold another person–an officer, shareholder, or associated member of a corporation– personally liable for that tort. These are not the facts before us. Hunckler does not attempt to hold Miller vicariously liable due to his role as president of Air Sorce-1. Rather, he seeks to hold Miller personally liable for the direct role he may have played when Hunckler was injured while moving the furnace down the stairs. In essence, Hunckler is arguing that the "additional connection with the tort" the district court found missing in *Wauchop* is present in these circumstances. 832 F.Supp. at 1575.

[17] Our Supreme Court has provided guidance for us in such a situation as this. In *Greg Allen Construction Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003), our Supreme Court determined that the president of a construction company, who performed much of the renovation work on the Estelles' home, was not personally liable for the negligent work. This was because the Estelles had entered into a contract with the construction company, and "without a contract, the Estelles would have no other claim for any structure negligently or otherwise constructed, and they do not assert any harm to their persons, no harm to any other property and any invasion of any other protectible interest." *Id.* at 173-74. However, our Supreme Court also explained:

> To be sure, Allen could be individually liable to the Estelles if he negligently burned their house down while working with a blowtorch whether this work was on the Estelles house under a contract with them, or the project was a neighbor's house and had no contractual

relationship to the Estelles. The reason is that this negligence goes beyond failure to perform up to contractual standards, and constitutes a tort even if there were no contractual relationship between the Estelles and either Allen or his corporation.

*Id.* at 175.

[18] In the instant case, Hunckler had no contract with Miller. His claim is for personal injuries he sustained as a result of Miller's alleged negligence. We agree with Hunckler that this situation is the very type of circumstance that our Supreme Court contemplated in *Greg Allen Construction Co.* when describing the possible scenarios in which a tort committed by a corporate officer or shareholder might result in personal liability.[6] Therefore, any grant of summary judgment that determined Miller was not liable by virtue of his position as an officer of a corporation would be erroneous.

[19] The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

Kirsch, J., concurs, and Robb, J., concurs in result with opinion.

---

[6] Miller also argues that public policy concerns justify limiting the personal liability of corporate officers to those cases in which acts of fraud or injustice are committed. We disagree. Holding corporate officers who commit torts that result in personal injury liable for such torts will encourage corporate officers to ensure the safety of others.

# IN THE
# COURT OF APPEALS OF INDIANA

Nick Hunckler,

*Appellant- Plaintiff,*

v.

Air Sorce – 1, Inc., Timothy
Miller and Kelly A. Brannen,

*Appellees-Defendants*

Court of Appeals Cause No.
84A01-1405-CT-217

**Robb, Judge, concurring in result.**

[20] I respectfully concur in result, believing, as the majority does, that there are genuine issues of material fact which preclude judgment for Miller as a matter of law.

[21] I, however, find it unnecessary to discuss *Thompson v. Owen* at all, let alone "abandon" the volunteer doctrine it espoused. First, as the majority notes, *Thompson* may not even be binding precedent, as the majority in that case agreed only on the result, not the analysis.

[22] Second, the situation decided by *Thompson* is not the situation we have here. Although the parties agreed at oral argument that Miller asked Hunckler if he would help move the furnace rather than Hunckler offering to assist, whether or

not Hunckler was a "volunteer" is a factual issue that would need to be resolved before we could even know if *Thompson* might apply. Is a person a "volunteer" only if he offers assistance first, or can he also be a "volunteer" if he agrees to assist when he is under no obligation to do so? Does it matter who has asked for assistance; i.e. is a person more or less a "volunteer" if he assists a neighbor versus a business enterprise? Moreover, Hunckler has not asserted a premises liability claim as in *Thompson*; he has asserted a negligence claim to which regular tort principles would apply.

[23] And finally, I do not believe it is up to us to determine that this state no longer recognizes the volunteer doctrine, especially in a case in which the doctrine might not even apply.

[24] With respect to the remainder of the opinion, however, I am in agreement with my colleagues, and I therefore concur in the result.